Maurice Wahl, J.
The plaintiff herein seeks to recover from American Express Company, First National City Bank, and Cook’s Travel Service the sum of $760. Between 1954 and 1966 the plaintiff purchased numerous travelers checks from each of these companies. On March 19,1968, it is claimed that a number of travelers checks remained uncashed. The plaintiff kept no records of the exact dates of the purchases, or the specific amount purchased from each company, or of the serial numbers of the travelers checks in question.
Plaintiff alleges that on the evening of March 19, 1968, Ms law offices were burglarized and $1,140 in travelers checks were taken from his office safe. After the burglary the plaintiff noti *994 fied the respective companies of the alleged loss, seeking reimbursement for the stolen checks. A refund of $380 was subsequently made by American Express Company, leaving a balance of $760 outstanding.
It is claimed by the plaintiff that the travelers checks were originally purchased in denominations of $10 and $20 and that the purchases were made in cash. Plaintiff also has specified the branch offices of the respective companies where the purchases were made.
At this stage in the proceeding, plaintiff has noticed the respective defendants for examination before trial to be conducted on separate days. He has demanded that the defendants produce at the time of the examination the following records: (1) all records directly or indirectly connected to the transactions between the plaintiff and said defendant, between the years 1954 and 1968; (2) records of all checks sold by defendants in the Borough of Manhattan and all checks cashed and honored between the years 1954 and 1968; and (3) all written material disseminated or issued by said defendants in connection with and for the purpose of inducing the public at large and the plaintiff to enter into a contract to purchase the checks from said defendants.
Each defendant herein has moved separately for a protective order against the projected examination before trial of themselves under the notices served upon defendants for each of their examinations before trial.
A careful review of each of the moving papers readily reveals a pattern of similarity of approach, viz., that unless plaintiff furnishes each defendant with minute and exact dates of purchase and serial numbers of the checks, then defendants by this procedural device of a protective order could in absence of such compliance by a purchaser of such checks deprive the plaintiff of the right of recovery.
How many purchasers of such checks are really advised and thus put on notice of the conditions imposed by the sellers thereof, that in the event of loss, exact dates, serial numbers and other such precise and detailed information is a condition precedent, as defendants would like it to be, for a recovery?
The standard of measure to be used is the skill, knowledge and sophistication of the usual everyday man — not of an expert accountant nor data-keeping automation.
In order to induce the purchase of vast amounts of these types of currency medium, defendants have engaged in extensive advertising in all media of their product, to wit, travelers checks. Travel brochures, folders, newspaper and periodical advertise *995 ments and other forms of invitations are extended to buyers, that for a fee, defendants would safeguard such purchasers’ funds against the risks of loss, theft or forgery, and other grounds. Many of the advertisements emphasize immediate payment of the loss without indicating the need of supplying the serial numbers, exact date of purchase and other fine details.
Examination of the pleadings here readily reveals that issues are present which plaintiff must prove in order to establish his cause of action.
The liberal and extensive use of the discovery and disclosure procedures of the CPLR was enacted to make the archaic and ancient preciseness in the wilderness of litigation a condemned procedure. Both sides are afforded a liberality of disclosure so that a cause may be fairly and honestly tried on the merits. Technicalities are discarded.
Furthermore, the mere fact that special defenses are pleaded, i.e., limitation of time, does not admit of the curtailment of the disclosure device. Inter alia, the question raised thereby is, when did plaintiff’s cause of action arise?
Defendant Cook’s motion stresses the proposition that an alleged condition precedent, viz., the supplying of the specific information by plaintiff would obviate the examination before trial. To state the proposition is to demonstrate its sophistry. Likewise such is First National City Bank’s position and that of American Express Company, and all three complain that their respective examinations before trial are scheduled for separate days. The court deems such positions frivolous.
It should be pointed out that the exhibits attached to plaintiff’s opposing affidavit herein indicate that the conditions of First National City Bank are printed on the reverse side, and those of American Express Company on the right-hand face side. There appear to be no conditions attached on the Cook documents. All those documents that have conditions thereon, however, do not in large and bold type refer thereto, and in the case of First National City Bank the left side merely refers to the reverse side for the conditions. Section 1-102 (subd. [2], par. [a]) of the Uniform Commercial Code is indicative of the legislative policy that is to be applied in a commercial transaction, of which the instant one is typical. Furthermore, the size of the minute type used is not only an eyestrain, but violates generally the required fairness of making known that such conditions are present. For example, see requirements of section 64-a of the Personal Property Law; also, the recent decisions relating to limitations of liability in passenger travel.
*996 Defendants’ observations that only $760 is involved in this lawsuit, and that because of this relatively small amount plaintiff should not be allowed an extensive examination before trial sufficient to prove his cause of action do not strike a responsive note in this court. It rather suggests that such a picayune amount to defendants — but perhaps large to plaintiff — should per se obviate the lawsuit. This court had thought that such approach had long ago vanished from the judicial horizon. It was the great Cardozo who aptly said, ‘1 The Law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today.” It does not require acumen to conclude that a claim small in amount is just as important to a humble litigant as a lawsuit for a large sum may be to an opulent claimant.
Those prophetic words apply today with even greater impact than ever. Rich and poor, strong and weak, all creeds, races, colors and religions stand equally before the bar of justice. There is no advantage to anyone, except being just and right; and so be it.
With respect to the first part of the notice, requiring defendants to produce all records directly connected to the transactions between the plaintiff and defendants between the years 1954 and 1968, the court directs the defendants to produce only those records pertaining to the sale of travelers checks made to the plaintiff between the years 1958 and 1966.
As to that portion of the notice — requiring all records of travelers checks cashed or honored by said defendants between the years 1954 and 1968 — the court directs that the defendants shall only be required to produce any such checks heretofore sold to the plaintiff that may have been paid or cashed since the burglary in March, 1968, and going back to 1958; if no such checks are found, then it may be considered as in the category of lost checks; any checks as may have been paid shall be produced for plaintiff’s inspection to ascertain the genuineness of plaintiff’s signature.
The court also denies that part of the notice requiring defendants to produce all checks sold by the defendants in the Borough of Manhattan between the years 1954 and 1968. This particular request is too broad and the court contemplates that the first part of the notice will embrace all sales of checks made to the plaintiff.
With respect to plaintiff’s demand for production of all advertising data used to induce the purchase of travelers checks, the form of the demand is too broad and would east an undue burden on the defendants. The court, however, will allow this item to *997 the extent that upon oral inquiry at the examinations defendants shall produce such major advertising media which were published to induce prospective purchasers, as this plaintiff, to acquire such checks during the years 1958 through 1966; by this the court means:— if there was one major advertising agency which handled these publications, a list of the publications and the times of publication, whether weekly, monthly or otherwise ; likewise, if there were any further publications by way of radio or TV, similar inquiry may be made and similar responses given by defendants. A specimen copy of such ads or script shall be produced and identified for the record.
These examinations before trial shall proceed expeditiously, and the court directs that they shall be commenced within one month from date hereof and shall terminate no later than two months thereafter.